ERVIN, Chief Justice
(specially concurring).
I concur in the foregoing opinion, but add a few additional thoughts on the subject.
The latent constitutional power of either branch of the Legislature to investigate subjects of legislative concern is so great it is hardly ever challenged by an administrative officer of state government, even when the power has not been fully and technically implemented. Even though a legislative investigation or creation of a committee for the purpose has not been provided, most governmental officials respond fully and voluntarily to questioning by any member or members of the legislature concerning any phase of state business. They respond voluntarily and promptly because of the long followed tradition the public’s representatives have the right to be fully informed of all phases of state business with few and rare exceptions, and be armed with the necessary data for more knowl-edgable discharge of legislative duties. Furthermore, public servants know that denial of information is usually a losing proposition because within reasonable limits any holdover legislator as a rule can sub *323 sequently secure the cooperation of his branch of the legislature to compel the reluctant official to furnish the information desired.
Under its constitutional power either house, if it secures the consent of the other branch to a concurrent resolution or to the passage of a statute, can constitutionally establish an interim committee to be then or thereafter appointed by its presiding officer to conduct an investigation into any current or future aspect of state business with attendant subpoena and contempt power. Of course when the legislature is in session, and now it often is, there is no constitutional barrier to unilateral action of either house to enter upon any such committee investigations.
F.S. Section 11.08 F.S.A., and immediately succeeding sections refer to “any com-mitte duly constituted by * * * the house of representatives, or by the senate and house of representatives, of the legislature of Florida." Had this language not merely referred to a committee of either house presumably already duly constituted but had directly authorized the creation of interim committees by either house and authorized the presiding officer of either house to appoint the members thereof and had delineated briefly the scope of investigative authority of any such committee or committes, or had duly ratified any resolution of either branch theretofore or thereafter creating an investigating committee or committees, such statutory action would have satisfied constitutional requirements for setting up interim investigating committees for either house.
From the realities outlined above the victory appellant wins in this litigation in all likelihood is Pyrrhic. The flaws in the legislative investigative authority in this instance can be easily corrected.
In concluding, I disparage in no way the zeal and right of the appellant or any litigant to seek adjudication of any issue which he considers may benefit him. I have tried in this concurring opinion to deal with realities and point out what is the public policy and tradition in legislative investigations ; the extent to which the legislature is generally considered entitled to be informed concerning state business by public servants; the ease with which legislative investigating committees may be constitutionally constituted and the extent to which their investigations can go in public matters.